UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| MERRIFIELD TOWN CENTER | ) | Case No. 09-18119-SSM |
| LIMITED PARTNERSHIP | ) | Chapter 7 (Involuntary) |
| | ) | |
| Debtor | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are (1) reopened proceedings on the debtor's motion to dismiss the

involuntary petition; and (2) the debtor's motion for attorney's fees and sanctions against the

petitioning creditors and their attorneys.  Following a hearing on March 18, 2010, the court took

the issues under advisement and is now prepared to rule.  For the reasons stated, the case will

remain dismissed, and attorney's fees will be awarded to the debtor.

Background

This case arises out of a dispute between the debtor, Merrifield Town Center Limited

Partnership, and a number of contract purchasers for condominium units at a two-building, 279-

unit project known as the Vantage Condominiums at Merrifield Town Center, located in Falls

Church, Virginia, that was being built by the debtor.  By the time construction of the units was

completed, their market values had dropped in most cases below the contract purchase price, and

only approximately 19 of the units actually went to settlement.  The remainder of the project was

converted to rental apartments.  Several lawsuits had been filed against the debtor in both state

1

and federal court seeking to invalidate the contracts and recover deposits based on various legal

theories, including violation of the federal Interstate Land Sales Full Disclosure Act.[1]

On October 2, 2009, Mahbod Hashemzadeh, one of the contract purchasers who had a

pending lawsuit (*Plant v. Merrifield Town Center, L.P.)* against the debtor in federal district

court, and Zhifeng and Xiuling Long, whose action in state court had recently been nonsuited,[2]

filed an involuntary petition against the debtor in this court under chapter 7 of the Bankruptcy

Code.  The petition was filed after the petitioning creditors' attorney learned in a deposition that

the debtor had conveyed its assets to related entities, but more immediately in the face of a

November 18, 2009, trial date in the federal action and a pending motion to dismiss the federal

court lawsuit for failure to respond to discovery.  After it was served with the summons, the

debtor filed a motion to dismiss the case and for sanctions.  Prior to the hearing on the motion,

seven individuals—Zhou Jie Plant, Byoung C. Cho, Joon Yong Ahn, Lydia Cotto, Malini N.

Raswant, Raj Chaudhry, and Rahul Chaudhry— filed motions to join in the petition, and five

others—Ho Yu, Janet Hronich, Helen Fajardo, H. Francesco Mustafa, and Kueifang Lee—filed

---

[1] At least nine such suits (several of which were subsequently consolidated) were filed against
the debtor in the United States District Court for this district, only two of which are still pending.
 One of those, *Bartley v. Merrifield Town Ctr. L.P.*, 1:08-cv-145, had originally been dismissed
for failure to state a claim for relief, but that ruling was reversed by the United States Court of
Appeals for the Fourth Circuit and remanded for trial.  *Bartley v. Merrifield Town Ctr.* L.P., 580
F.Supp.2d 495 (E.D. Va. 2008), *rev'd sub nom. Long v. Merrifield Town Ctr. L.P.*, 611 F.3d 240
(4th Cir. 2010).  Another case, *Ahn v. Merrifield Town Ctr. L.P.*, 1:08-cv-73, was dismissed as
settled after a ruling in the plaintiffs' favor.  *See Ahn v. Merrifield Town Ctr. L.P.*, 584
F.Supp.2d 848 (E.D. Va. 2008).  The largest case, in terms of number of plaintiffs, *Plant v.
Merrifield Town Ctr. L.P.,* 1:08-cv-374, recently resulted in a final grant of summary judgment
in favor of the debtor.

[2] Zhifeng Long and Xiuling Long, together with five other plaintiffs, recently filed a class action
lawsuit against the debtor in the district court.  *Long v. Merrifield Town Ctr. L.P.,* No. 1:10-cv-
1113.

notices of joinder.  One additional creditor, Richard Ritter, joined in an opposition to the motion

to dismiss but did not specifically join in the petition.  A hearing was held on December 1, 2009,

at which the court determined that the claims of Zhifeng Long and Xuiling Long constituted only

a single claim; that the claims of all three petitioning creditors were subject to bona fide dispute;

and that the petition had been filed in a bad faith attempt to secure a tactical advantage in the

federal court action.  Accordingly, the petition was dismissed by order of December 2, 2009,

with the court retaining jurisdiction to consider the debtor's request for an award of costs,

attorney's fees, and damages against the petitioning creditors and their attorney.  Although the

court's bench ruling referred in passing to the claims of Yu, Hronich, Fajardo, Mustafa, and Lee,

the court did not specifically rule on the motions or notices for joinder.

Following the dismissal of the case, the petitioning creditors and the five creditors who

filed notices of joinder each filed motions for reconsideration.  Following a further hearing, the

court entered an order on February 3, 2010: (1) allowing Yu, Hronich, Fajardo, Mustafa, and Lee

to join as petitioning creditors;  (2) reopening the hearing on the motion to dismiss for the

limited purpose of determining whether the claims asserted in the notices of joinder were the

subject of a bona fide dispute as to liability or amount; (3) denying the motions for joinder filed

by Plant, Cho, Ahn, Cotto, Raswant, and the Chaudhrys; and (4) setting a further hearing.  That

hearing, as previously noted, was held on March 18, 2010.

At the outset of the hearing, the Fajardo claim was withdrawn on the record, leaving for

consideration only the claim of Yu for $50,273, Hronich for $56,200, and a joint claim of

Mustafa and Lee for $500.  The Yu and Hronich claims each represented the deposits they had

paid in connection with the purchase agreements they signed.  Mustafa and Lee, unlike Yu and

Hronich, had gone to settlement, and their claim was for a working capital contribution the

debtor had committed to make on their behalf to the condominium association.

Discussion

The dismissal of the involuntary petition was premised on several determinations, among

them the failure of the original petitioning creditors to meet the requirement of § 303(b)(1),

Bankruptcy Code, that an involuntary petition be filed by three or more creditors holding claims

against the debtor aggregating at least $13,475 that are neither contingent nor subject to bona

fide dispute as to either liability or amount.[3]  The claims of Yu, Hronich, Mustafa, and Lee

aggregate $106,973, and the only question is whether they are subject to bona fide dispute as to

either liability or amount.  If so, the involuntary case must remain dismissed, and the court must

then determine whether the debtor is entitled to an award of attorney's fees, compensatory

damages, and punitive damages against the petitioning creditors and their attorneys.  The court

will address those issues in turn.

A.    Whether the five joining creditors have claims that are subject to bona fide
      dispute as to liability or amount?

Yu and Hronich assert claims for the amount of their respective deposits—$50,273 in the

case of Yu and  $56,200 in the case of Hronich—based on breach of contract and violations of

the Virginia Condominium Act in connection with their purchase contracts for units at the

Vantage.  Mustafa and Lee jointly assert a $500 claim for a working capital contribution the

debtor failed to make on their behalf.

---

[3]  The aggregate amount of qualifying claims has been increased to $14,425 for cases filed on or
after April 1, 2010.

The court will first address the Yu and Hronich claims since, if they are subject to bona

fide dispute, the joint Mustafa and Lee claim would not satisfy the numerosity requirement for

an involuntary petition.  There is no dispute that Yu and Hronich each signed purchase contracts

and paid deposits.  There is also no dispute that neither went to settlement.  They assert,

however, that they had a legal right to back out of the agreements because, prior to the date on

which they were obligated to settle, the debtor (faced with defaulting purchasers and a collapsed

market for condominiums) turned the project into a rental community, thereby precluding them,

as a practical matter, from obtaining financing, since conventional real estate lenders will not

make loans to purchase condominium units in a building in which more than 30% of the units are

not owner-occupied.  Additionally, following the execution by Yu and Hronich of their

respective purchase agreements, the debtor issued an amended public offering statement.  The

record does not show what specific changes were made to the public offering statement that had

previously been provided to them.  It appears undisputed, however, that Yu, upon receiving the

amended public offering statement, asserted a right under the Virginia Condominium Act to

rescind the contract and receive a refund of his deposit.  Hronich was apparently never given the

amended public offering statement.

The debtor, however, says that even if all that is true, Yu and Hronich are not entitled to

cancel their agreements and recover their deposits because the contracts had no financing

contingency[4] and specifically reserved the debtor's right to retain and rent unsold units in the

---

[4] More accurately, the contracts had a provision labeled "Financing Contingency," but it was
one-sided, allowing the *debtor* to cancel the contract if the purchaser failed to provide an
acceptable financing commitment within two weeks, but not relieving the *purchaser* of his or her
obligation if financing fell through or failed to materialize.

project.  Additionally, they cite the district court opinion in the *Bartley* case construing the

Virginia Condominium Act as allowing rescission of a purchase agreement within 10 days of the

delivery of an amended public offering statement only "if the amendment is material and the

amendment adversely affects the buyer's bargain." *Bartley,* 580 F.Supp.2d at 502.  Although the

district court's companion rulings with respect to the federal Interstate Land Sales Full

Disclosure Act were reversed by the Fourth Circuit, the ruling with respect to the claims under

the Virginia Condominium Act were not.  The ruling in *Bartley*, to be sure, is not binding on Yu

or Hronich, who were not parties to that action, but the issue is not whether their claims under

the Virginia Condominium Act are barred, but only whether they are subject to bona fide

dispute.  Certainly, when a published decision (even one reversed on other grounds) has ruled in

favor of the debtor on a legal point on which another creditor's claim is based, it is difficult to

see how the debtor's dispute would not be considered bona fide.  This is not to say that there is

no likelihood that Yu and Hronich will ultimately prevail on their claims, or that the court does

not have considerable sympathy for their position, but that is not the test.  The test, rather, is

whether the debtor can point to facts and legal arguments sufficient to show that there is a

genuine dispute as to whether it is liable to the petitioning creditor.  The court concludes that the

debtor has done so in this case, and that Yu and Hronich are therefore not eligible to serve as

petitioning creditors.

Because Mustafa's and Lee's $500 claim, standing alone, would not satisfy the statutory

requirement for three eligible creditors having claims aggregating $13,475, the court need not

reach the issue of whether it is subject to a bona fide dispute.  The court simply notes that

because no demand has ever been made on Mustafa and Lee to pay the $500 which they contend

the debtor is required to pay on their behalf to the condominium association, their right to

indemnity from the debtor is not yet mature.  In any event, an affidavit filed by the debtor

represents that the debtor has not only paid the working capital contributions, but that

purchasers, like Mustafa and Lee, who actually went to settlement have not had to pay

condominium dues since taking title.

      For the foregoing reasons, the court determines that the petition has not been joined in by

three or more creditors holding claims aggregating at least $13,475 that are neither contingent

nor subject to bona fide dispute as to either liability or amount.  The involuntary petition will

therefore remain dismissed.

      B.      <u>In what amount, and against whom, is an award of attorney's fees, damages, and
punitive damages appropriate</u>?

      Section 303(i), Bankruptcy Code, provides as follows:

      (i) If the court dismisses a petition under this section other than on consent of all
petitioners and the debtor, and if the debtor does not waive the right to judgment
under this subsection, the court may grant judgment—
          (1) against the petitioners and in favor of the debtor for—
              (A) costs; or
              (B) a reasonable attorney's fee; or
          (2) against any petitioner that filed the petition in bad faith, for—
              (A) any damages proximately caused by such filing; or
              (B) punitive damages.

As an initial matter, the court observes that, because the statute uses the word "may," an award

of costs, attorney's fees, and damages, whether compensatory or punitive, is not a matter of right

but of discretion.  And second, compensatory and punitive damages are available only against

petitioners who "filed the petition" in bad faith.  The court need not reach the issue of whether

creditors who join in the petition *after* its filing may be treated as having "filed the petition" for

the purpose of § 303(i)(2), because in any event the court cannot find that Yu, Hronich, Fajardo,

Mustafa, and Lee acted in bad faith.  While the good faith, or otherwise, of Plant, Cho, Ahn,

Cotto, Raswant, and the Chaudhrys—all of whom were plaintiffs in the *Plant* litigation that was

briefly stayed as a result of the filing—may be a closer question, they not only did not in literal

terms "file" the petition, the denial of their motions to *join* in the petition means they never

became petitioners, and thus cannot be liable under either subparagraph of § 303(i).

No evidence was presented by the debtor of *any* damages to it (other than the attorney's

fees incurred in contesting the petition, which are separately provided for) proximately caused by

the filing.  That leaves for consideration only the question of costs, reasonable attorney's fees,

and, if the court finds that the original petitioners—Hashemzadeh and the Longs—filed in bad

faith, punitive damages.  There is also the question of whether attorney's fees and damages under

§ 303(i) can be imposed against *counsel* representing the petitioners or only against the

petitioners themselves, and if the latter, whether sanctions may be awarded against counsel for

the petitioners under Rule 9011.

With respect to an award of attorney's fees, the debtor has submitted invoices and an

affidavit from its attorneys reflecting 151 hours of attorney time, billed at hourly rates ranging

from $195.00 per hour to $365.00 per hour, plus 9.5 hours of paralegal time billed at the rate of

$125.00 per hour, for legal services related to opposing the involuntary petition.  The requested

fees total $45,898.50, plus an additional $5,000.00 for the anticipated time in preparing for and

attending the sanctions hearing and collecting any sanction that is awarded.  The court has

reviewed the time records, as well as the docket entries in this case and the pleadings filed by

counsel.  Although the quality of the representation provided was first rate, and the pleadings

well-drafted and well-researched, the unmistakeable conclusion that emerges is that debtor's

counsel determined from the outset to mount a gold-plated, take-no-prisoners defense.  Put

another way, *far* fewer hours could have been expended for precisely the same result.  Given that

any award of attorney's fees under § 303(i) is discretionary rather than mandatory, the court is

not inclined to reward counsel (or, more accurately, tax petitioners) for work beyond what was

reasonably necessary to secure dismissal of the case.  In this case, the motion to dismiss (which

largely focused on legal issues) was granted following a single hearing held two months into the

case, and even taking into account the subsequent motions to reconsider and motions to join, the

court would be hard-pressed to find that a sum in excess of $25,000.00 represents a reasonable

fee.  Although an award of *any* attorney's fees is discretionary, such an award is appropriate in

this case because, as the court found in dismissing the petition, the petition was filed primarily to

secure a tactical advantage in the on-going district court litigation.  Specifically, this court found

that "[the] involuntary petition was filed because a trial date was looming."  And, although the

automatic stay is designed to protect the debtor and the debtor's estate, it was counsel for the

petitioning creditors, who was counsel for the plaintiffs in the district court action, who filed the

suggestion of bankruptcy that resulted in the scheduled trial date of November 18, 2009, being

cancelled.  The court further explained that, even though counsel for the petitioning creditors

may well have learned only a few days prior to the filing that the debtor had conveyed the real

property to related entities, that discovery would not, standing alone, justify an involuntary

filing, since, once a proper petition was filed, the trustee could reach back two years before the

bankruptcy filing to recover any transfer made for less than adequate consideration and could

also avail himself of any longer period of limitations under applicable state law.  The court

therefore concluded, "So, there is absolutely no reason that the petition had to be filed the date it

did.  This was not a case that Cinderella's carriage would have turned into a pumpkin had this

involuntary petition not been filed, and its effect was to delay the prompt determination of the

claims[.]"  In so holding, the court observed:

> I don't mean to suggest that I come out one way or the other on the merits of the claims.  It may very well be that at the end of the day these petitioning creditors have good claims.  But the way to decide that is to let the litigation go forward, not to throw a monkey wrench by the filing of an involuntary petition.

This is a case, in short, in which an involuntary petition was filed, not merely improvidently, but

affirmatively for an improper purpose, namely, derailing the trial in another court.  For that

reason, the court concludes that an award of attorney's fees would be appropriate even if the

petitioning creditors ultimately prevailed on their underlying claims against the debtor.

It is true that the improper motive can be traced more directly to the petitioning creditor's

attorney, Henry St. John Fitzgerald, than to the petitioning creditors themselves.  But § 303(i)

speaks of an award against the petitioning creditors, and a creditor who authorizes his attorney to

file an involuntary petition, even if poorly advised by his attorney, must bear the risk, if the

petition is dismissed, of having to compensate the debtor for attorney's fees reasonably incurred

in successfully defending against the petition.  It would be tempting, in such circumstances, for

the court to impose the attorney's fee award either solely on the petitioning creditor's attorney or

jointly and severally on the petitioners and their attorney, but the plain language of § 303(i)

permits an award only against "the petitioners."

There is, however, a separate basis upon which such fees may be imposed on petitioning

creditor's counsel, and that is Rule 9011.  That rule provides, in pertinent part, as follows:

> (b) **Representations to the Court**. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the

best of the person's knowledge, information, and belief, formed after an inquiry
reasonable under the circumstances,—
     (1) it is not being presented for any improper purpose, such as to harass or
to cause unnecessary delay or needless increase in the cost of litigation;
     (2) the claims, defenses, and other legal contentions therein are warranted
by existing law or by a nonfrivolous argument for the extension, modification, or
reversal of existing law or the establishment of new law;
     (3) the allegations and other factual contentions have evidentiary support
or, if specifically so identified, are likely to have evidentiary support after a
reasonable opportunity for further investigation or discovery; and
     (4) the denials of factual contentions are warranted on the evidence or, if
specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Bankr.P. 9011(b).  Any sanction imposed for violation of the rule must be limited to

"what is sufficient to deter repetition of such conduct or comparable conduct by others similarly

situated," and may consist of, or include, "directives of a nonmonetary nature, an order to pay a

penalty into court, or, if imposed on motion and warranted for effective deterrence, an order

directing payment to the movant of some or all of the reasonable attorney's fees and other

expenses incurred as a direct result of the violation."  Fed.R.Bankr.P. 9011(c)(2).  Although

normally a motion for sanctions cannot be filed with the court unless it has first been served on

the offending party or attorney, and the pleading or paper is not withdrawn within 21 days, that

"safe harbor" requirement does not apply if the conduct alleged is the improper filing of a

petition.  In this case, the court, for the reasons previously stated, has little difficulty in finding

that (whatever the merits of the underlying claims) the involuntary petition was "presented for an

improper purpose" within the meaning of Rule 9011(b)(1), since its primary and immediate

purpose was to derail the pending trial in the district court action.  The court further concludes

that the appropriate sanction is an order directing payment to the debtor "of some or all of the

reasonable attorney's fees incurred . . . as a direct result of the violation."  Because in this case

the attorney is more immediately culpable than the client, a sanction at least equal to the full

amount of the attorney's fees determined in connection with the § 303(i) award is appropriate,

with payment of either the Rule 9011 sanction or the § 303(i) award constituting a credit against

other.  To be perfectly plain: the debtor is entitled to payment of $25,000.00 in total, regardless

of whether collected from counsel or the petitioning creditors.

For the foregoing reasons, it is

**ORDERED:**

1.  The motion by Ho Yu, Janet Hronich, Helen Fajardo, H. Francesco Mustafa, and

Kueifang Lee to alter or amend the order of December 2, 2010, dismissing this case is denied,

and the case remains dismissed.

2.  The debtor's motion for an award of attorney's fees and sanctions is granted to the

extent set forth in this order and otherwise denied.

3.  The debtor, Merrifield Town Center Limited Partnership, shall recover of the

petitioning creditors, Mahbod Hashemzadeh, Zhifeng Long, and Xiuling Long, the sum of

$25,000.00, as an award under § 303(i), Bankruptcy Code.

4.  Henry St. John Fitzgerald shall pay to the debtor, within 60 days of the entry of this

order, the sum of $25,000.00 as a sanction under Rule 9011(c)(2).

5.  If not paid within 60 days of the entry of this order, the sums awarded in paragraphs 3

and 4 shall bear interest from the entry of this order at the rate specified in 28 U.S.C. § 1961

until paid.

6.  Any payment made in satisfaction of either the attorney's fee award or sanctions

award shall constitute a credit against the other.

7.  The clerk will mail a copy of this opinion and order, or give electronic notice of its

entry, to the parties listed below.


Date: _____                    _____
                                                 Stephen S. Mitchell
Alexandria, Virginia                             United States Bankruptcy Judge


Copies to:

Sean Patrick Roche, Esquire
Cameron/McEvoy, PLLC
11325 Random Hills Road, Suite 200
Fairfax, VA 22030
Counsel for the debtor

Henry St. John FitzGerald, Esquire
2300 9th St. S., Ste 304
Arlington, VA 22204
Counsel for petitioning creditors

John P. Forest, II, Esquire
StahlZelloe, P.C.
11350 Random Hills Rd., Suite 700
Fairfax, VA 22030
Counsel for Richard Ritter, Ho Yu, Janet Hronich, Helen Fajardo, H. Francesco Mustafa, and
Kueifang Lee

Jack Frankel, Esquire
Office of the United States Trustee
115 South Union St., Suite 210
Alexandria, VA  22314