UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: )
)
   MERRIFIELD TOWN CENTER ) Case No. 09-18119-SSM
   LIMITED PARTNERSHIP ) Chapter 7 (Involuntary)
)
               Debtor )

**MEMORANDUM OPINION**

Before the court is the motion of Mahbod ("Mike") Hashemzadeh for relief from a judgment entered on December 3, 2010, awarding the debtor, Merrifield Town Center Limited Partnership ("Merrifield") $25,000.00 in attorneys' fees against him in connection with an involuntary bankruptcy petition in which he is named as one of the petitioning creditors. *In re Merrifield Town Center L.P.,* 2010 WL 5015006 (Bankr. E.D. Va. 2010). Hashemzadeh attacks the judgment as void because he did not know of or authorize the filing of the involuntary petition, which he characterizes as a rogue act by the attorney who was representing him in a federal district court lawsuit against the debtor. An evidentiary hearing was held on August 12, 2011. Hashemzadeh was present in person and was represented by counsel. Merrifield was present by counsel. Following the hearing, the court took the motion under advisement to review the evidence and is now prepared to rule.

Background

In 2005 Hazhemzadeh, a real estate agent, signed a contract to purchase a condominium unit in a project that was being built by the debtor in Falls Church Virginia, known as the Vantage Condominiums at Merrifield Town Center. The contract contained no financing

1

contingency, and Hashemzadeh made a deposit in the amount of $74,808, which was held by a title company. By the time construction was completed some three years later, and. Hashemzadeh notified of the settlement date, the value of the unit had dropped below the contract purchase price, and he was unable to obtain a loan to complete the purchase. A number of other contract purchasers were in the same situation. After discussions with other purchasers, he consulted with, and decided to retain, attorney Henry St. John FitzGerald to recover his deposit. FitzGerald's legal theory was that the contracts were void because the debtor had violated the federal Interstate Land Sales Full Disclosure Act, and he ultimately recruited over 100 contract purchasers as plaintiffs in two actions in the United States District Court for the Eastern District of Virginia that were consolidated as *Plant v. Merrifield Town Center L.P.*, 1:08-cv-374.

On May 1, 2008, Hashezadeh signed and faxed to Mr. FitzGerald an Engagement Agreement, together with a cover sheet informing Mr. FitzGerald that his scheduled settlement date was May 6, 2008, and requesting, "I would like you to send a letter to the Title Company (Escrow Agent) about not releasing my deposit. . . . Could you also send a letter to the Seller." The agreement itself provided:

> Client hereby retains Attorneys to represent him/her in litigation in the United States District Court, Alexandria Division, against Merrifield Town Center, LP, and others . . . alleging violations by Defendants of Title 15, Section 1703, United States Code, the Interstate Land Sales Full Disclosure Act ("ILSA") and such other common law claims or statutory violations as may be appropriate (the "Litigation").

The agreement further stated:

> It is agreed that the principal purpose and objective of the Litigation is to bring Defendants and their agents into compliance with any applicable laws and to hold them liable for past violations. Attorneys shall, *upon consultation with Client*,

2

> *have the maximum authority permitted by law to conduct and/or resolve this Litigation in a manner designed to achieve this objective. . . . Attorneys will keep Client informed of major developments in the Litigation and will consult with Client as to major decisions in the Litigation.*

(emphasis added).

FitzGerald had already filed, on April 17, 2008, a class action complaint on behalf of all contract purchasers whose units had not been completed within two years of the signing of the contract seeking, among other relief, a declaration that the contracts were void based on violations of the Interstate Land Sales Full Disclosure Act, and a refund, with interest, of the contract purchasers' deposits. The named plaintiff was Zhou Jie Plant. On May 12, 2008, the complaint was amended to add eight additional plaintiffs, including Hashemzadeh.

Although class certification was denied,[1] Mr. FitzGerald achieved some initial success in the litigation, including a holding that the debtor was not exempt from the disclosure requirements of the Interstate Land Sales Full Disclosure Act.[2] In the course of the action, the debtor served discovery requests on each of the plaintiffs, at that time numbering approximately 115. Although Hashemzadeh provided timely discovery responses, the majority of the plaintiffs did not respond at all, and many responded only after a second motion to compel and for sanctions had been filed. While that motion was pending, and while preparing for a November 18, 2009, trial date, FitzGerald learned in a deposition that the debtor had conveyed its assets to related entities. FitzGerald then decided to file an involuntary bankruptcy petition against the

---

[1] *Plant v. Merrifield Town Center Ltd. Partnership*, 2010 WL 4860671 (E.D.Va. September 2, 2010).

[2] *Plant v. Merrifield Town Center Ltd. Partnership*, 749 F.Supp.2d 404 (E.D.Va 2009).

debtor, which he did on October 2, 2009. The named petitioners were Hashemzadeh, with a claim of $74,808, based on "illegal contract," and two other individuals. None of the named petitioning creditors personally signed the petition. Instead, Fiztgerald signed for them as "attorney and agent." The evidence is hotly contested as to whether Hashemzadeh knew of, or authorized, the filing. FitzGerald testified that he personally spoke with Hashemzadeh and obtained his consent to the filing. Hashemzadeh denies having done so, and states that during the entire course of the litigation he spoke with FitzGerald only three times.

On December 2, 2009, this court dismissed the involuntary petition primarily on the ground that the claims of the petitioning creditors were "the subject of a bona fide dispute as to liability or amount" within the meaning of § 303(b)(1), Bankruptcy Code, but also because the petition had been filed for the improper purpose of derailing the District Court litigation. On a motion for reconsideration, the court set a hearing to determine whether the claims asserting by five other creditors who had filed notices of joinder were the subject of a bona fide dispute. In the interim, Merrifield had filed a motion under § 303(i), Bankruptcy Code, for attorney's fees and sanctions for the improper filing of the involuntary petition. By memorandum opinion and order of December 3, 2010, this court adhered to the ruling dismissing the petition, granted Merrifield a judgment jointly and severally against Hashemzadeh and the other two petitioning creditors in the amount of $25,000 for a portion of the attorney's fees Merrifield had incurred in defending against the involuntary petition. The court also imposed sanctions in the same amount against FitzGerald under Rule 9011, Federal Rules of Civil Procedure, with any payment of the sanction operating as a credit against the attorney's fee award, and vice versa.

Merrifield filed a copy of the judgment with the clerk of the Circuit Court of Fairfax

County, Virginia, on February 10, 2011. In the interim, the United States District Court had entered a judgment in the amount of $9,066.99 against FitzGerald and 97 of the plaintiffs (*not including Hashemzadeh*) in the *Plant* lawsuit for failure to provide timely discovery responses.[3] That judgment was filed in the Fairfax County Circuit Court on February 11, 2011, which issued a notice to each of the persons against whom the judgment had been entered. The notice that was served on one of them, Maria Bras, stated as follows:

> Pursuant to Virginia Code Section 8.01-465.3 (1988), notice is hereby given of the filing of a judgment in favor of the plaintiff MERRIFIELD TOWN CENTER, L.P., UNIWEST GROUP, LLC, UNIWEST DEVELOPMENT, LLC, and MICHAEL D. COLLIER versus MARIA BRAS rendered in US DISTRICT COURT FOR THE EASTERN DISTRICT OF VA entered 05/24/2010.

Hashemzadeh was provided with a copy of the notice that Bras had received and was asked if he knew what was going on. He responded by sending an email to Fitzgerald on February 21, 2011, stating: "Henry, Attached please find the lender [*sic*] everyone has received. Please let me know what plan of action you have to stop the transfer of funds to them. Mike." At or about that time, Hashemzadeh received a notice from the clerk of the Fairfax County Circuit Court of the filing of the judgment against him stating:

> Pursuant to Virginia Code Section 8.01-465.3 (1988), notice is hereby given of the filing of a judgment in favor of the plaintiff MERRIFIELD TOWN CENTER LIMITED PARTNERSHIP versus MAHBOD HASHEMZADEH, ZHIFENG LONG, XIULING LONG and HENRY ST.JOHN FitzGerald rendered in the US BANKRUPTCY COURT EASTERN DISTRICT OF VIRGINIA entered 12/03/2010.

---

[3] Ultimately, the District Court entered summary judgment in favor of Merrifield with respect to the claims of the remaining plaintiffs, including Hashemzadeh. *Plant v. Merrifield Town Center Ltd. Partnership*, 751 F.Supp.2d 857 (E.D.Va. 2010). That judgment is currently on appeal to the United States Court of Appeals for the Fourth Circuit (Docket No. 10-2378). The larger group of appellants is represented by FitzGerald; a smaller group, including Hashemzadeh, have hired separate counsel to represent them.

5

When he received the notice, Hashezadeh did not focus on the fact that it related to a different judgment than the one he was already aware of against Bras and the other plaintiffs.

After being served with a summons to answer interrogatories in aid of judgment, Hashemzadeh sent FitzGerald an email on April 7, 2011, stating:

> I received a Summons for Debtor Interrogatories from Fairfax county and court date of May 20, 2011, which don't understand why I got this.
>
> I have tried to contact you and left you numerous message and no return call.
>
> I don't understand how this case was handled and/or is being handled by your office.  We do not get any communication what so ever form [*sic*] your office.
>
> All  I know I and others gave deposit on a condo that the Seller never delivered to us because there was not a Bank that was financing / lending on the project.  I gave them proper notice when they delivered Condo docs two years after contract canceling it.  According to you we won the case.  But in reality we are all robbed by the outcome and instead of being a plaintiff now we are defendant. SOMETHING IS DEFFINTLY [*sic*] WRONG WITH THIS PICTURE.

Later that same day, he and Rahul Chaudry, one of the other plaintiffs, went to FitzGerald's house and confronted him.[4]  It was then that he first learned that the sanctions judgment had been entered against him.  FitzGerald told him that if the plaintiffs could pool together enough funds to get it paid before May 20th, "it will go away," and that anyone who contributed to the payment of the judgment would be reimbursed out of any subsequent recovery.  On or about April 18, 2011, Virginia Commerce Bank, where Hashemzadeh maintained an account, was served with a garnishment summons, and the Bank placed a hold on $25,270.28 in the account.

---

[4] Hashemzadeh—whose testimony was corroborated by Rahul Chaudry, one of the other purchasers—testified that the only prior time he had spoken with FitzGerald, other than when hiring him, was in December 2010, when a meeting was held with FitzGerald and about 39 of the plaintiffs to advise them of the status of the case.  No mention was made in that meeting of the involuntary bankruptcy filing.

At that time, Hashemzadeh was overseas but was told of the garnishment. On his return, he consulted with an attorney, who made demand on FitzGerald to pay the judgment, so that Hashemzadeh's funds could be released. FitzGerald did not do so, and the garnished funds were ultimately turned over to Merrifield. The garnishment of Hashemzadeh's bank account fully satisfied the $25,000 judgment, and Merrifield took no further action against FitzGerald or the Longs. The present motion by Hashemzadeh for relief from the judgment was filed on May 29, 2011.

<u>Discussion</u>

Rule 9024, Federal Rules of Bankruptcy Procedure, incorporates (with certain limitations not applicable here) Rule 60 of the Federal Rules of Civil Procedure. Rule 60(b), in turn, allows a court, on motion and just terms, to relieve a party from a final judgment for a number of reasons, including that "the judgment is void." Fed.R.Civ.P. 60(b)(4). A judgment is not "void" under Rule 60(b)(4), however, "merely because it is or may be erroneous," *Baumlin & Ernst, Ltc. v. Gemini, Ltd*, 637 F.2d 238, 242 (4th Cir. 1980), and a judgment may be set aside for voidness only if the rendering court lacked personal jurisdiction, subject matter jurisdiction, or acted in a manner inconsistent with due process of law. *Eberhardt v. Integrated Design & Constr., Inc.,* 167 F.3d 861, 871 (4th Cir. 1999). Here, Hashemzadeh asserts that this court lacked personal jurisdiction to enter a judgment against him for the simple reason that he never authorized FitzGerald to invoke this court's jurisdiction by filing the involuntary petition in his name against Merrifield.

A.

As a threshold matter Merrifield argues that the court need not reach the issue of

FitzGerald's authority to file the petition, because Hashemzadeh has not met the timeliness requirement for Rule 60 relief. That rule states, "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Rule 60(c)(1), Fed.R.Civ.P. Although the motion here was filed only 177 days after entry of the judgment, Merrifield nevertheless asserts that Hashemzadeh did not act with reasonable dispatch, since—even if FitzGerald had kept him in the dark with respect to entry of the judgment itself—he was notified of it by the clerk of the Fairfax County Circuit Court on or shortly after February 10, 2011, but waited another three months before seeking relief from it.

The court notes, first, that a number of courts—including the United States Court of Appeals for this circuit in an unpublished opinion—have held that, notwithstanding the literal language of Rule 60(c)(1), the "reasonable time" requirement simply does not apply to relief under Rule 60(b)(4) from a void judgment:

> Unlike . . . all other Rule 60(b) motions, which must be brought within a "reasonable time," a Rule 60(b)(4) motion may be brought to set aside a void judgment at any time. *See Carter v. Fenner*, 136 F.3d 1000, 1006 (5th Cir.1998) (" 'There is no time limit on an attack on a judgment as void ... even the requirement that the motion be made within a "reasonable time," which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion.' "); *Hertz Corp. v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1130 (11th Cir.1994) (citing cases adopting this rule).

*Garcia Fin. Group, Inc. v. Va. Accelerators Corp.*, 3 Fed.Appx. 86, 87 (4th Cir. 2001); *UTA, Inc. v. Airco, Inc.,* 597 F.2d 220, 224 n.9 (10th Cir. 1979) ("[I]f a judgment is void, it is a nullity from the outset and any 60(b)(4) motion for relief is therefore filed within a reasonable time."). But even if the "reasonable time" requirement *does* apply, the court cannot concur that the present motion was not timely brought. Although Hashemzadeh can certainly be faulted for not

8

carefully reading the notice sent to him by the state court, his mistaken belief that it was simply another copy of the judgment he was already aware of against the other plaintiffs is understandable. The court further credits Hazhemzadeh's testimony that it was not until April 2011 that he actually realized that a judgment had been entered against him arising out of the involuntary bankruptcy case. Given the need to find another attorney and for that attorney to investigate and determine what happened, the court concludes that the motion for relief from the judgment was filed within a reasonable period of time. Indeed, even if Hashemzadeh could fairly be charged with knowledge of the judgment as early as mid-February, when he received the notice from the state court, a three and a half month delay in filing a motion for relief from the judgment is simply not unreasonable.

B.

The question of whether the judgment is void because Hashemzadeh never authorized FitzGerald to file the involuntary petition is more difficult. First, there is the factual dispute as to whether FitzGerald obtained Hashemzadeh's actual consent to the filing. And second, there is the legal issue of whether, even in the absence of actual knowledge of the filing, FitzGerald's actions nevertheless fell within the outer limits of the authority conferred on him by the Engagement Agreement.

As to the first point, and having had an opportunity to hear both witnesses testify, the court finds that FitzGerald neither informed Hashemzadeh of his intention to file the involuntary petition nor obtained his affirmative consent to being named as a petitioning creditor. Because Hashemzadeh himself concedes that he was viewed as one of the more actively-involved among the plaintiffs, and one to whom many of the others looked for guidance, it is easy to see why

9

FitzGerald would have assumed Hashemzadeh would be willing to take the lead as petitioning creditor. Indeed, it is possible that Hashemzadeh, had he been recruited as a petitioning creditor, might have agreed, although it is not clear why doing so would have been in his best interest, since any involuntary bankruptcy filing carries some risk to the petitioning creditor. *See Atlas Machine & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709 (4th Cir. 1993). Hashemzadeh was interested only in a refund of his deposit, which at that time was being held by a title company. Thus the transfer of Merrifield's own assets to affiliated entitities would pose no immediate threat to his ability to recover his deposit if the District Court ruled in his favor. And because he, unlike most of the plaintiffs, had responded to Merrifield's discovery, he was in no immediate peril of having his claims dismissed for procedural default. Thus, it seems unlikely that, had he been fully advised of the risks and benefits of being one of the petitioning creditors, he would have consented to doing so. His testimony that he did not expressly agree is certainly buttressed by the fact that he did not personally sign the petition. Rather, FitzGerald signed for him as attorney and agent. Hashemzadeh's testimony paints an distressing picture—which FitzGerald does not convincingly rebut—of an attorney who consistently failed to provide him with updates as to what was happening in the District Court litigation and did not provide him with copies of pleadings filed in the lawsuit. FitzGerald admits that he did not advise Hashemzadeh that the involuntary petition had been dismissed and did not advise him of the sanctions judgment.[5] Given that rather astonishing failure, the court finds FitzGerald's

---

[5] Evidently, FitzGerald delegated many of what might be considered client management functions—including, according to FitzGerald, notifying Hashemzadeh of the sanctions judgment—to a disbarred attorney, John C. Pasierb, who worked for him as a paralegal. Pasierb unfortunately died before the present motion was filed and was therefore unavailable to testify.

testimony that he nevertheless personally spoke with Hashemzadeh and obtained his consent to the filing of the involuntary petition to be less than credible.

C.

Nevertheless, the filing of the involuntary petition did not occur in a vacuum, but in the context of, and ancillary to, litigation that Hashemzadeh had expressly engaged FitzGerald to bring. That litigation was specifically described in the Engagement Agreement as being "brought in the United States District Court, Alexandria Division, against Merrifield Town Center, L.P. . . . alleging violations by Defendants of title 15, Section 1703, United States Code, the Interstate Land Sales Full Disclosure Act ("ILSA"), and such other, common law claims or statutory violations as may be appropriate." The Agreement conferred "maximum authority" on FitzGerald "to conduct and/or resolve this Litigation in a manner designed to achieve" the objective of bringing the defendants and their agents "into compliance with any applicable laws" and "to hold them responsible for past actions." As the court observed in the memorandum opinion and order imposing the sanctions, "the petition was filed primarily to secure a tactical advantage in the then on-going district court litigation." In his testimony, FitzGerald denied any improper motive, and explained that he felt the involuntary petition was justified to "put under a cloud the transfers [of Merrifield's assets] that occurred." But regardless of the motive—whether to secure a tactical advantage or instead simply to preserve the ability to recover on any money judgment that might be obtained—the fact remains that the involuntary petition was filed to promote the interest of the plaintiffs in the District Court litigation that Hashemzadeh had hired FitzGerald to bring. FitzGerald's failure to comply his duty—not only under the engagement agreement but also the Virginia Rules of Professional Responsibility—to

11

"keep Client informed of major developments in the Litigation and to consult with Client as to major decisions in the Litigation" does not vitiate the fact that Hashemzadeh authorized FitzGerald to bring the District Court lawsuit and in connection with the litigation to take any action which FitzGerald in his professional judgment deemed appropriate.  That the decision to file the involuntary petition was, as the court previously found, improvident, and that it was made without properly consulting with Hashemzadeh, did not deprive the court of personal jurisdiction over Hashemzadeh or otherwise render the judgment void.  For that reason, the court declines to set aside the judgment as to Hashemzadeh under Rule 9024.

D.

The court stresses that the present ruling is limited to a determination of whether the judgment from which Hashemzadeh seeks relief is void, not whether Hashemzadeh was properly or competently represented.  Whether FitzGerald's failure to consult with Hashezadeh and to explain the risks attendant to the filing of the involuntary petition constitute violations of the Virginia Rules of Professional Responsibility or whether they constitute professional malpractice for which he may be held liable to Hashemzadeh for money damages are simply not issues over which this court has jurisdiction, and they will have to be addressed, if at all, in other forums.

A separate order will be entered consistent with this opinion.

*September 13, 2011*                    */s/ Stephen S. Mitchell*
Date: _____    _____
                                        Stephen S. Mitchell
Alexandria, Virginia                    United States Bankruptcy Judge

**ENTERED ON DOCKET: SEP 13, 2011**

Copies to:

Sean Patrick Roche, Esquire
Cameron/McEvoy, PLLC
11325 Random Hills Road
Suite 200
Fairfax, VA 22030
Counsel for the debtor

Bizhan Beiramee, Esquire
Bizhan Beiranee, Esq., P.C.
6663 B Old Dominion Drive
Third Floor
McLean, VA 22101
Counsel for Mahbod Hashemzadeh

Henry S. FitzGerald, Esquire
2300 9th St. S
Ste 304
Arlington, VA 22204
Counsel for the petitioning creditors

Jack Frankel, Esquire
Office of the U.S. Trustee
115 South Union Street, Ste. 210
Alexandria, VA 22314